UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**LYNN K. HANSEN-SALAK, Individually and as
Executrix of the Estate of Steven M. Salak, Deceased,**

**Plaintiff,**

v.                                                                                  5:05-CV-458

**THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA; AMERICAN INTERNATIONAL GROUP,
INC.; THE UNITED STATES LIFE INSURANCE
COMPANY IN THE CITY OF NEW YORK d/b/a THE
UNITED STATES LIFE; THE PATRIOTS' PATH
COUNCIL, INC., BOY SCOUTS OF AMERICA f/k/a
WATCHUNG AREA COUNCIL, INC., BOY SCOUTS
OF AMERICA and the MORRIS-SUSSEX AREA
COUNCIL, BOY SCOUTS OF AMERICA; and
HIAWATHA SEAWAY COUNCIL, INC., BOY SCOUTS
OF AMERICA;**

**Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Gibson, McAskill & Crosby, LLP
Timothy J. Graber, Esq., of counsel
Suite 900, Chemical Bank Building
69 Delaware Avenue
Buffalo, New York 14202
Attorneys for Plaintiff

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Emily A. Hayes, Esq., of counsel
Fred N. Knopf, Esq., of counsel
3 Gannett Drive
White Plains, New York 10604
Attorneys for Defendants The Prudential Insurance Company of America and
The United States Life Insurance Company of the City of New York d/b/a
The United States Life

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## INTRODUCTION

In her amended complaint (Dkt. No. 12) in this action under the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), plaintiff seeks to recover accidental death benefits under two employee benefit plans issued to her late husband. Presently before the Court are motions for summary judgment by plaintiff (Dkt. No. 45); defendant The Prudential Insurance Company of America ("Prudential") (Dkt. No. 46); and defendant The United States Life Insurance Company of the City of New York d/b/a The United States Life ("USLife") (Dkt. No. 47).[1]  For the reasons set forth below, the Court denies plaintiff's motion, grants Prudential's motion, and denies USLife's motion.

## BACKGROUND

Plaintiff is the widow of Steven M. Salak and the appointed representative of his estate. At the time of his death on July 27, 2003, Mr. Salak was employed by Hyundai Motor America. Through his employment, Mr. Salak was insured under two group insurance policies, one issued by Prudential and one by USLife.  Both policies provided death benefits as well as additional benefits for accidental death.

Following Mr. Salak's death, plaintiff filed claims under both policies seeking the accidental death benefits in addition to the death benefits on the ground that Mr. Salak's death resulted from accidental drowning.  Each insurer paid the death benefit[2] but denied the accidental

---

[1] The action has been discontinued against all other defendants (Dkt. Nos. 21, 39).

[2] Prudential paid the $263,000 death benefit; USLife paid $200,000.  Under the Prudential policy, the accidental death benefit is an additional $263,000; under the USLife policy, it is an additional $200,000.

death benefit on the ground that coronary artery disease contributed to Mr. Salak's death, and therefore the death was not accidental within the meaning of the policy. Upon plaintiff's administrative appeals, both insurers upheld the denial of accidental death benefits. Plaintiff now seeks review of those denials. The Court upholds Prudential's determination and finds that questions of fact preclude summary judgment regarding USLife's determination.

## PLAINTIFF'S CLAIM AGAINST PRUDENTIAL

**The Prudential Policy**

The Prudential policy included basic term life coverage in the amount of $263,000, and accidental death coverage in the same amount. The "Employee Accidental Death and Dismemberment Coverage" provides that it "pays benefits for accidental Loss," including "loss of life." The policy further states:

> A. BENEFITS.
> Benefits for accidental Loss are payable only if all of these conditions are met:
> (1) You sustain an accidental bodily Injury while a Covered Person.
> (2) The Loss results directly from that Injury and from no other cause.
> ***
> Not all such Losses are covered. See Losses Not Covered below.
> ***
>
> B. LOSSES NOT COVERED
> A Loss is not covered if it results from any of these:
> ***
> (3) Sickness, whether the Loss results directly or indirectly from the Sickness.
> ***

The Prudential Policy further states: "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims

Administrator shall not be overturned unless arbitrary and capricious." The policy also spells out claim and appeal procedures; these are set forth below in the discussion of exhaustion of administrative remedies.

**Prudential's Administrative Record**

In addition to the policy and claim review and appeal documents, the administrative record before Prudential contains the following: Mr. Salak's medical records since 1998; the records from Adirondack Medical Center's Emergency Room to which Mr. Salak was transported by ambulance; the death certificate signed by pathologist C. Francis Varga, M.D. dated July 27, 2003; the Preliminary Autopsy Findings Report prepared by Dr. Varga dated July 28, 2003; the Autopsy Findings Report by Dr. Varga dated October 3, 2003; a letter dated July 6, 2004 from Dr. Varga to plaintiff's then attorney regarding Mr. Salak's cause of death; and a report by Prudential's medical director, Joyce Bachman, M.D.

Upon detailed review of the administrative record, the Court notes the following. Mr. Salak's prior medical records contain no reference to any cardiac problem. The emergency room record, signed by Stephen Weinman, M.D. states that Mr. Salak was dead on arrival and gives the immediate cause of death as "cardiac arrest." The death certificate, prepared by Dr. Varga, states in "Part I, Immediate Cause": "Asphyxiation due to fresh water drowning." Under "Part II, Other Significant Conditions Contributing to the Death but Not Related to Cause Given in Part I," it states: "Coronary artery stenosis with possible recent myocardial infarction."

Dr. Varga's Preliminary Autopsy Findings Report dated July 28, 2003 lists as findings:

>     I. Fresh water drowning
>         A. Hemorrhagic pulmonary edema
>     II. Stenosis of the left anterior descending coronary artery, atherosclerotic,
>         with possible early (<24 hours) myocardial infarction.

>  \*\*\*
>  IV. Slight Cardiac hypertrophy and dilatation
>  V. Subsidiary diagnoses
>     \*\*\*
>        G. Slight aortic atherosclerosis

Dr. Varga's full autopsy report dated October 2, 2003 states in the final summary:

> At autopsy examination the deceased demonstrated classical signs of fresh-water drowning with an abundant amount of pink, frothy fluid present in the lungs and in the tracheobronchial tree. However, he also demonstrated a focus of stenosis of the anterior descending coronary artery that was narrowed to about 85-90%. Microscopic examination of the heart revealed some early changes, such as waviness of the myocardial fibers, edema, interstitial hemorrhage, and some vacuolization of the myocardial fibers, as well as focal hypereosinophilia. These changes are believed to represent very early myocardial infarction, occurring within the last 24 hours, perhaps just a few hours.
>
> The deceased is thought to have an arrhythmia during his swim. This probably resulted from underlying coronary artery disease and additional myocardial hypoxia produced by the exercise. This resulted in his inability to continue the swim, and his submergence and drowning. The presence of frothy bodily fluid within the lung and tracheobronchial tree indicates that the deceased was alive when he sank below the water surface. The entire problem was probably brought about by the coronary artery changes.
>
> The manner of death is fresh water drowning. Contributing to the death was coronary artery atherosclerosis with early myocardial degenerative changes. The manner of death is accidental.

Prudential denied accidental death coverage by letter dated March 3, 2004 stating:

> Based on the information provided, Mr. Salak['s] immediate cause of death was asphyxiation due to fresh water drowning. Other significant conditions contributing to this death but not directly related to the cause was coronary artery atherosclerosis with possible myocardial infarction. According to the autopsy report from the Adirondack Medical Center, Mr. Salak demonstrated signs of stenosis of the anterior descending coronary artery that was narrowed to about 82%-90%. An examination of his heart revealed some early changes, such as waviness of the myocardial fibers, as well as focal hypereosinophilia. These changes were clear signs of early myocardial infarction, occurring within the past few hours. According to Group Policy G-77593, it states that a loss is not covered if it results from

> sickness, whether the loss results directly or indirectly from the sickness. In this case, Mr. Salak had an arrhythmia during his swim. This probably resulted from underlying coronary artery disease and additional myocardial hypoxia produced while swimming. This resulted in his inability to continue to swim, his submergence, eventually drowning. It is evident that the coronary artery changes Mr. Salak experienced was a contributing factor, which led to his death. Furthermore, the records indicate that Mr. Salak's death did not occur solely as a result of an accidental drowning and in fact, could have occurred even if he had been exerting himself strenuously out of the water on dry land. Therefore, since Mr. Salak's death resulted from complications of his sickness, not solely and exclusively from an accidental injury, the death does not meet the group policy definition of accidental death.

Plaintiff appealed the denial by letter dated July 22, 2004, arguing that Mr. Salak died from accidental drowning and that Prudential's conclusions were speculative. Plaintiff noted that Mr. Salak did not suffer from nor had he ever been treated for a heart condition. She enclosed a letter dated July 6, 2004 from Dr. Varga regarding Mr. Salak's cause of death. Dr. Varga's letter includes the following:

> In this particular case the findings were classical for those of fresh water drowning; these, and the fact that the patient did drown, are absolute fact. From the autopsy findings we can be certain that the patient had continuing cardiac activity after he was submerged in the water. Otherwise, the pulmonary findings would have been entirely different. The fact is the patient was a victim of drowning.
>
> The presence of the coronary artery stenosis comes into play only when we try to determine why the event (the drowning) occurred. In reconstruction of the case, the postulation is made that the patient may have had some chest pain or some other event which interfered with his ability to continue swimming. However it should be noted that the findings of drowning are absolute, and the postulation that some cardiac event may have contributed to the patient's death is a speculation.
>
> It is most probable that if this patient had some type of cardiac episode while on land that he most certainly would have survived. The microscopic changes in the heart are minimal and equivocal at best, it should be noted that the final report states possible early infarction, not probable. Furthermore, given the extent of the change, and the focal change in the

>   coronary artery, this lesion is thought to have been entirely survivable and, given today's success with coronary artery bypass, coronary stenting and so on, this individual probably would not only have survived following therapy, but would have had a good prognosis.

Prudential upheld the denial by letter dated September 14, 2004. In doing so, Prudential relied in part on a medical review report dated August 30, 2004 prepared by Prudential's medical director Joyce Bachman, M.D. Dr. Bachman reviewed the record, including Dr. Varga's July 6, 2004 letter, and provided the following analysis:

>   Though the immediate cause of death was an accidental drowning clearly *another cause contributed to the loss*. The significant CAD with the exercise resulted in the arrhythmia, cardiac ischemia and resultant myocardial infarction.
>
>   While we do not have knowledge of a prior history of heart disease or evidence of treatment for coronary artery disease, an 85-90% obstruction of the LAD (the main coronary artery) is very significant disease and a fact that cannot be ignored. Given the autopsy findings, it is not only plausible but a probable cascade of events outlined in the autopsy report leading to this death. There is no explanation for the drowning without the underlying coronary artery disease. Nor can one dismiss the microscopic findings consistent with a MI in the past 24 hours.
>
>   Given the significant LAD stenosis, exercising at home or outside on land could have produced **a fatal arrhythmia** or hypoxia/cardiac ischemia with a resultant myocardial infarction. If one would survive or not, is speculation. The pathologist letter stating [that] his *objective microscopic observations* were equivocal and speculation after the fact, seems compromising. Autopsy reports are not speculation but about finding facts to determine causes contributing to his death.
>
>   The observations of the heart were: "waviness of the myocardial fibers, edema, interstitial hemorrhage and some vacuolization of the myocardial as well as focal hypereosinophilia. These changes are believed to represent some very early MI, occurring within the past 24 hours, perhaps just a few hours." These are objective microscopic changes, ie objective facts.
>
>   The contract language states: "The loss results directly from that injury and *from no other cause*." The loss did not occur from an accidental injury unrelated to the coronary artery disease and probable arrhythmia/MI. Thus

>   the loss exclusion is properly applied.

(Emphases in original.)  Prudential's September 14, 2004 letter upholding its detemination states:

>   Based on the information provided, Mr. Salak's immediate cause of death
>   was asphyxiation due to fresh water drowning.  Other significant
>   conditions contributing to this death but not directly related to the cause
>   were coronary artery arteriosclerosis with possible myocardial infarction.
>   The submitted medical records indicated that Mr. Salak's death did not
>   occur solely as a result of an accidental drowning and in fact could have
>   occurred even if he had been exerting himself strenuously out of the water
>   on dry land.  Mr. Salak's death resulted from complications of his sickness,
>   not solely and exclusively from an accidental injury.
>   \*\*\*
>   Prudential maintains that the contract language, providing coverage where
>   the loss results directly from the injury and no other cause, is enforceable.
>   The loss in this case did not occur from an accidental injury unrelated to
>   the coronary artery disease and the resulting arrhythmia and or myocardial
>   infarction. In fact, the autopsy report clearly states, with respect to the
>   death of Mr. Salak, that he had coronary artery disease and, while
>   swimming, suffered an arrhythmia, which led to the drowning.  The report
>   goes as far as to state that the drowning "was probably brought about [by]
>   the coronary artery changes."

Addressing Dr. Varga's July 6, 2004 letter, Prudential states: "We have reviewed the letter from Dr. Varga and we are in agreement that the death was 'accidental' in the context of his examination. However, the letter from Dr. Varga does not advance your legal arguments as to the operation of the policy."  Plaintiff did not pursue a second appeal but rather commenced the instant action.

**Discussion - Exhaustion of Remedies**

It is well established that claimants must exhaust ERISA benefit claims by pursuing all administrative remedies provided by their plan in the event benefits are denied.[3]  *See Chapman v.*

---

[3]

The Second Circuit decision in *Paese v. Hartford Life Accident Ins. Co.* established that failure to exhaust administrative remedies in this context is an affirmative defense.  449 F.3d 435, 446 (2d

(continued...)

*ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). This requirement reflects "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy*, 989 F.2d at 594 (citation and quotation marks omitted).

The Prudential policy sets forth the following claims procedures:

> If your claim for benefits is denied ... you or your representative may appeal your denied claim in writing to Prudential[.]
> \*\*\*
> If the appeal of your benefit claim is denied ... you or your representative may make a second appeal of your denial in writing to Prudential[.]
> \*\*\*
> If the second appeal of your benefit claim is denied ... you or your representative may make a third appeal of your denial in writing to the Prudential Appeals Committee[.]
> \*\*\*
> If you elect to initiate a lawsuit without submitting to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the third level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

Prudential's initial denial of benefits on March 3, 2004, states:

> You have a right to appeal this decision....
> \*\*\*
> If your appeal is denied, you may seek a second appeal....
>
> If our decision to deny benefits is upheld at the second level of appeal, you may file a voluntary third appeal. You are entitled to receive upon request, sufficient information to make a decision about filing this appeal....
>
> After completion of the first two levels of appeal, you may also file a

---

[3](...continued)
Cir. 2006). Although Prudential did not raise the affirmative defense in its answer, it is not waived because the answer was filed May 12, 2006, prior to the issuance of the *Paese* decision on May 24, 2006. *See id*. at 447, n.4.

> lawsuit under the Employee Retirement Income Security Act (ERISA).
> ERISA allows you to file suit for policy benefits and reasonable attorney's
> fees. Your decision on whether to file a third appeal will not affect your
> rights to sue under ERISA.

Plaintiff appealed by her letter dated July 22, 2004.  On appeal, Prudential upheld its denial.  The denial letter, dated September 14, 2004, explains:

> Your client may again appeal this decision....
> \*\*\*
> If our decision to deny benefits is upheld at the second level of appeal, you may file a voluntary third appeal....
> \*\*\*
> After completion of the first two levels of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a third appeal will not affect your rights to sue under ERISA.

It is undisputed that plaintiff did not pursue the second level of the administrative appeal process before commencing this action.  Thus, plaintiff failed to exhaust the administrative appeals available under the Prudential policy.  She has made no showing of any ground to excuse her from the exhaustion requirement.  Prudential is entitled to summary judgment affirming its determination on the ground of failure to exhaust administrative remedies.

**Discussion - Review on the Merits**

In any event, Prudential's determination must be upheld on the merits.  It is well established that where a benefit plan gives the administrator discretionary authority to determine eligibility for benefits, the administrator's decision is reviewed under the arbitrary and capricious standard.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The burden is on the plan administrator to demonstrate that the arbitrary and capricious standard applies.  *See Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999).  Applying this

standard, district court may overturn a denial of benefits only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id*. (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). "Substantial evidence" is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (citation and internal quotation marks omitted). The scope of review is narrow, and the court may not substitute its own judgment for that of the decision maker. *See Pagan*, 52 F.3d at 442.

The Prudential policy provides: "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." This policy language satisfies Prudential's burden to show that the policy grants it discretionary authority to determine eligibility for benefits within the meaning of *Firestone*. Thus, this Court reviews Prudential's denial of benefits under the arbitrary and capricious standard.

Plaintiff contends that the *de novo* standard of review applies here because the administrator, as the entity that would pay the claim if plaintiff prevailed, operated under a conflict of interest. To obtain *de novo* review on this ground, plaintiff must show that the administrator was in fact influenced by the conflict of interest, *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000), that is, that the conflict actually "affected the reasonableness" of the administrator's decision. *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1255 (2d Cir. 1996) (quoting *Pagan*, 52 F.3d at 443). Plaintiff has made no such

showing. Thus, the Court does not conduct *de novo* review but rather considers the fact of Prudential's dual interest as "a factor to be weighed 'in determining whether there has been an abuse of discretion.'" *Pulvers*, 210 F.3d at 92 (quoting *Sullivan*, 82 F.3d at 1255). The Court rejects plaintiff's other arguments on the question of the standard of review.[4] Accordingly, the Court turns to review Prudential's denial of benefits under the deferential standard set forth in *Kinstler* and *Pagan*.

Prudential's policy provides benefits for accidental loss only if the insured sustains an accidental bodily injury and the loss "results directly from that Injury and from no other cause." The policy excludes loss resulting from "Sickness, whether the Loss results directly or indirectly from the Sickness." Prudential concluded in its initial denial letter of March 3, 2004 that Mr. Salak's heart condition was a significant contributor to his death and that since Mr. Salak's death resulted from complications of his sickness, and not solely and exclusively from an accidental injury, it did not meet the group policy definition of accidental death.

In upholding the denial upon appeal, Prudential found that Mr. Salak's death did not occur solely and exclusively as a result of an accidental drowning but rather resulted in part from complications of his sickness. Stated otherwise, the death did not result from an accidental injury unrelated to the coronary artery disease and the resulting arrhythmia and/or myocardial infarction. Addressing Dr. Varga's July 6, 2004 letter, Prudential stated that Mr. Salak's death was

---

[4] Plaintiff also contends that the terms of the plan are ineffective to afford discretion to the administrator because Prudential does not produce evidence that Mr. Salak actually possessed a copy of the policy or plan summary. The law does not impose such a requirement, and the cases cited by plaintiff are inapposite. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990) (where employer filed and distributed a plan summary, but not the plan itself, it could not rely on the terms of the plan to contradict the terms of the plan summary); *Arthurs v. Metropolitan Life Ins. Co.*, 760 Fed.Supp. 1095, 1098-99 (S.D.N.Y. 1991) (same).

accidental in the context of Dr. Varga's examination, but not in the legal context relating to the operation of the Prudential Policy, because the loss "did not occur from an accidental injury unrelated to the coronary artery disease."

In reviewing whether this determination was arbitrary and capricious, the Court takes into account the fact of Prudential's dual interest as insurer and administrator.  On thorough review of the record, the Court observes that Prudential's determination cites to and is supported by the following evidence in the administrative record: Dr. Weinman's emergency room record giving the immediate cause of death as "cardiac arrest"; the death certificate prepared by Dr. Varga stating that a significant condition contributing to the death was "coronary artery stenosis with possible recent myocardial infarction"; Dr. Varga's full autopsy report, referring to the narrowing of a coronary artery and to microscopic changes in the heart "believed to represent very early myocardial infarction, occurring within the last 24 hours, perhaps just a few hours," and stating that "[t]he entire problem was probably brought about by the coronary artery changes"; and Dr. Bachman's report stating that the obstruction of the main coronary artery is "very significant disease and a fact that cannot be ignored," that "one cannot dismiss" the objective microscopic findings consistent with a myocardial infarction in the past 24 hours, and that the loss "did not occur from an accidental injury unrelated to the coronary artery disease and probable arrhythmia/MI."  There is no basis to find that Prudential's denial of benefits is without reason, unsupported by substantial evidence, or erroneous as a matter of law.

In arguing for reversal of Prudential's determination, plaintiff relies on Dr. Varga's letter of July 6, 2004 stating that Mr. Salak had continuing cardiac activity after entering the water; that the finding of drowning is absolute, while the cardiac event is speculation; that if the cardiac

-13-

event had occurred on land Mr. Salak would have survived; and that the cause of death was fresh water drowning, the manner of death was accidental, and the contribution of cardiac changes to his death are speculative. However, the fact that there is evidence supporting plaintiff's position does not alter the fact that there is substantial evidence supporting Prudential's determination. Applying the deferential arbitrary and capricious standard of review, the Court upholds Prudential's denial of accidental death benefits.

Accordingly, plaintiff's motion for summary judgment is denied with respect to her claim against Prudential. Prudential's motion for summary judgment dismissing plaintiff's claim against it is granted.

## PLAINTIFF'S CLAIM AGAINST USLIFE

**The USLife policy**

The USLife policy included basic term life coverage in the amount of $200,000 and accidental death coverage in the same amount. The "Accidental Death and Dismemberment Benefits" section of the USLife policy provides:

> This section provides benefits for accidental:
> - loss of life[.]
> ***
> If you suffer such loss solely as a result of an injury caused by an accident, due proof of such loss must be sent to United States Life.... When the proof is received, United States Life will pay the benefit amounts described below.
> FOR LOSS OF LIFE
> United States Life will pay to the beneficiary the full benefit amount shown in the Schedule of Benefits.
> ***
> EXCLUSIONS
> No benefits will be paid for any loss that results from or is caused directly, indirectly, wholly or partly by:
> ***
> 3. a physical or mental sickness, or treatment of that sickness.

-14-

USLife does not rely on any policy provision affording discretionary authority to the plan administrator.  Nor does it point to any unexhausted administrative remedies available to plaintiff.

**USLife's Administrative Record**

In addition to the policy and claim review and appeal documents, the administrative record before USLife contains the following: Mr. Salak's medical records since 1998; the records from Adirondack Medical Center's Emergency Room to which Mr. Salak was transported by ambulance; the death certificate signed by pathologist C. Francis Varga, M.D. dated July 27, 2003; the Preliminary Autopsy Findings Report prepared by Dr. Varga dated July 28, 2003; the Autopsy Findings Report by Dr. Varga dated October 3, 2003; a letter dated July 6, 2004 from Dr. Varga to plaintiff's then attorney regarding Mr. Salak's cause of death; a report by Paul Steel, M.D., who reviewed the file at USLife's request; and the Incident Report prepared by the New York State Police.[5]

Mr. Salak's medical records, the emergency room records, the death certificate, and the reports and letter by Dr. Varga have been summarized above in connection with plaintiff's claim against Prudential.  Dr. Steel's report, received by USLife on March 9, 2004 states in part:

> There was no struggle, no cry for help, no thrashing – clearly not the picture of a typical drowning.
>
> The autopsy exam showed classical signs of fresh [water] drowning (frothy fluid in lungs, etc.). "However, he also showed an ant[erior] descending coronary artery stenosis of 85-90%. Microscopic exam showed regional changes believed to represent a very early myocardial infarction.
>
> The autopsy report . . . states "the deceased was thought to have an arrhythmia during swim – probably resulting from underlying coronary artery disease causing heart muscle hypoxia, inability to continue the swim/

---

[5] The police report was part of USLife's record but not of Prudential's.

-15-

>submergence/ and drowning." "The entire problem was probably brought about by coronary artery atherosclerosis."
>
>This is the conclusion, also, of this consultant.
>
>Since the Policy reads "Accidental Death" coverage is excluded for any loss "resulting from/ is caused wholly or partly by a physical sickness," it would appear the claimant does not qualify for coverage as per the Policy wording.

The New York State Police Incident Report prepared on the date of the incident states that Eileen C. Merrigan and Russell S. Cox, aquatic directors, were on the dock observing Mr. Salak and others participate in a swim test. Mr. Salak had swum 100 yards and was 15 to 20 feet from the dock. The police report summarizes part of Ms. Merrigan's statement as follows:

>Upon instruction from Cox, Salak turned over on to his back to complete the float portion of the test. Immediately, a wave went over him and he went under the surface, feet first. Merrigan and Cox knew Salak was in trouble. Cox jumped into water to assist.... [After they pulled Salak from the water,] Merrigan checked for pulse in victim's neck, with negative results.

The police report summarizes portions of Mr. Cox's statement as follows:

>Cox observed [Mr. Salak's] head go below the surface and not return. At this time, Mr. Cox was located on the swim dock, approximately 15 to 20 feet from the victim.... Cox dove into the water and swam to where the the victim was last observed on the surface. He located victim floating, below the surface at a depth of about 5 feet. He pulled victim to surface and then to dock, keeping victim's head above water. When victim was lifted to dock, he was unresponsive with no pulse or breathing.

USLife's March 22, 2004 letter denying plaintiff's claim for accidental benefits states:

>This policy only provides benefits in the event the loss was suffered solely as a result of an injury caused by an accident. The policy contains an exclusion which states no benefits will be paid for any loss that results from or is caused directly, indirectly, wholly or partly by a physical sickness or treatment of that sickness. Based upon the facts and circumstances surrounding the insured's death ... we have concluded that the loss was not the result of an accidental injury. Consequently no benefits

-16-

will be payable under this policy.

Plaintiff appealed on July 23, 2004, arguing that Mr. Salak died from accidental drowning and that USLife's conclusions were speculative. Plaintiff stated that Mr. Salak did not suffer from nor had he ever been treated for a heart condition. She enclosed Dr. Varga's July 6, 2004 letter.

On September 21, 2004, USLife affirmed its decision, stating:

> This policy provides accidental death benefits in the event the loss was suffered solely as a result of an injury caused by an accident. According to Adirondack Medical Center's Autopsy Findings Report, "The deceased is thought to have an arrhythmia during his swim. This probably resulted from underlying coronary artery disease and additional myocardial hypoxia produced by the exercise." The Adirondack Medical Center's Record of Emergency Room Visit lists the insured's chief complaint as, "Cardiac arrest." This information confirms the insured's coronary artery disease was a significant condition which contributed to his death.
>
> The claim was reviewed by Paul H. Steel, MD, a medical consultant. After reviewing the file he noted, "There was no struggle, no cry for help, no thrashing – Clearly not the picture of a typical drowning." He also stated he agreed with the Autopsy findings where it stated, "The entire problem was probably brought about by coronary artery atherosclerosis." Based on the information contained in our file, the loss was not the result of an injury caused by an accident.
>
> The policy also contains an exclusion which states, "No benefits will be paid for any loss that results from or is caused directly, indirectly, wholly or partly by a physical or mental illness." Because the insured's coronary artery disease was a contributing factor in his death, we feel this exclusion is applicable to the claim.

Plaintiff then brought this action.

**Discussion**

USLife does not point to any provision in the policy granting discretion to the plan administrator in determining entitlement to benefits. Thus, this Court reviews the determination

*de novo. See Kinstler*, 818 F.3d at 251.  Nor does USLife refer to any unexhausted administrative remedies available to plaintiff.   Accordingly, the Court turns to consider whether either party is entitled to summary judgment on the merits.  As noted above, summary judgment is appropriate only when there is no genuine issue with regard to any material fact.  *See* Fed. R. Civ. P. 56 (c). A genuine issue of material fact exists if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 248.

Under the USLife policy, plaintiff is entitled to recover accidental death benefits only if Mr. Salak died "solely as a result of an injury caused by an accident[.]"  Plaintiff cannot recover if the loss "results from or is caused directly, indirectly, wholly or partly by ... a physical ... sickness[.]"  The administrative record before USLife presents a genuine issue of material fact regarding whether Mr. Salak died solely as a result of an accident, or whether his death was caused directly, indirectly, wholly or partly by a physical sickness.  There is record evidence, including Dr. Varga's July 6, 2004 letter, that would permit a reasonable factfinder to conclude that Mr. Salak died solely from accidental drowning.  There is also evidence supporting the conclusion that the circumstances of Mr. Salak's death fall within the policy exclusion for losses caused directly, indirectly, wholly or partly by a physical sickness.  Accordingly, upon *de novo* review, the Court denies both parties' motions for summary judgment.

## CONCLUSION

Having considered all issues raised by the parties, the Court denies plaintiff's summary judgment motion in its entirety, grants Prudential's motion for summary judgment dismissing the action against it, and denies USLife's motion for summary judgment.  Plaintiff's claim against defendant USLife will proceed to a bench trial.  *See DeFelice v. American Intern. Life Assur. Co.*

-18-

*of N.Y.*, 112 F.3d 61, 64 (2d Cir. 1997) (there is no right to a jury trial in a suit to recover ERISA benefits regardless of whether the standard of review is arbitrary and capricious or *de novo*).  The discovery deadline has passed and the case is deemed trial ready.

It is therefore

ORDERED that plaintiff's motion for summary judgment (Dkt. No. 45) is denied in its entirety; and it is further

ORDERED that the motion by defendant The Prudential Insurance Company of America (Dkt. No. 46) for summary judgment is granted; and it is further

ORDERED that the motion by defendant The United States Life Insurance Company of the City of New York d/b/a The United States Life  (Dkt. No. 47) for summary judgment is denied.

IT IS SO ORDERED.

Dated: September 16, 2008
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge